## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JALEESA WILLIAMS,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 25-CV-4403** |
| | : | |
| **MARRIOTT/HILTON-DAVIDSON** | : | |
| **HOSPITALITY,** | : | |
| **Defendant.** | : | |

### MEMORANDUM

**MCHUGH, J.**                                                    **OCTOBER 30, 2025**

Jaleesa Willaims has filed a *pro se* Complaint (ECF No. 2) alleging that her former

employer Marriott/Hilton-Davidson Hospitality ("Marriott") violated various provisions of

federal, state, and local employment discrimination law.  Williams has also filed a Motion to

Proceed *In Forma Pauperis* and a Request for Appointment of Counsel (ECF Nos. 6, 7.).  For

the following reasons, the Court will grant Williams leave to proceed *in forma pauperis*, dismiss

her Complaint with leave to amend, and deny the Motion to Appoint Counsel without prejudice.

### I.    FACTUAL ALLEGATIONS[1]

Ms. Williams, an African American female,[2] asserts that Marriott hired her as a Senior

Sales Manager in December 2023.  Williams alleges that, also in December 2023, someone

named Rammamaurthy (whose position or title is unclear) asked Williams "to wear a Santa

---

[1] The facts set forth in this Memorandum are taken from Williams's Complaint (ECF No. 2).
The Court adopts the pagination assigned by the CM/ECF docketing system.

[2]  Williams refers to herself as "an African American male" at one point in her Complaint but
otherwise employs female-gendered pronouns such as "she" and "her" in referring to herself.
(*Compare* ECF No. 2 at 3, *with* id. at 4-9.)  The Court understands her allegation to be that she is
female.

Claus hat for a group photo," and when Williams refused, Rammamaurthy "forbade her from participating and excluded her from the photo." (Compl. at 3-4.) Williams communicated to Rammamaurthy that "she should not be obligated to wear something or do anything that makes her uncomfortable," and "pointed out that she should not have been excluded from the photo for not wanting to do something that could be against her religious beliefs or personal reasons, which she does not need to disclose." (*Id.* at 4.) Ms. Williams alleges that Rammamaurthy "responded by saying, 'If you do not like the way we do things, then maybe this isn't the right hotel for you.'" (*Id.*) Williams claims that she "felt a significant change in the office atmosphere after th[is] event, largely due to gossip regarding her exclusion from the group photo." (*Id.* at 5.) She alleges that her direct supervisor Lauren Ilgenfritz "described [Williams] as 'aggressive and nasty,' warning employees to 'watch out for [Williams],'" and that whenever she asked Ilgenfritz for "guidance," Ilgenfritz gave her "little to no instruction or support." (*Id.* at 5-6.) Williams further alleges that Ilgenfritz disclosed Williams's salary to other co-workers, "a clear violation of internal company policy," which she asserts "created a hostile undercurrent in [her] day-to-day interactions from that point forward." (*Id.* at 8-9.)

Ms. Williams also alleges that a co-worker named Johnson "contributed to a hostile work environment through microagressions, making comments like 'stay in your place' and 'be quiet,'" that Johnson did not afford her "the same courtesies as other colleagues," and that Johnson "displayed racial prejudice through her actions and comments." (*Id.* at 6.) Although Williams does not indicate when this occurred, she states that she decided to bypass her direct supervisor and "report" Jonhson to her General Manager Bennett, and that Bennett asked Williams "not to file a formal complaint with Human Resources," because Johnson's "contract was expiring," and "reassured [Williams] that the situation would be resolved soon and there was

no need for further action." (*Id.* at 6-7.) Williams then "confided" in her direct supervisor Ilgenfritz, "sharing her experience and the difficulties she faced in the hostile and toxic environment." (*Id.* at 7.) Williams states that Ilgenfritz "reported the issue to Human Resources, but no further action was taken." (*Id.*)

Ms. Williams asserts that her colleagues "distance[d] themselves" from her, and that she had a "constant feeling of being judged, ostracized, and unsupported." (*Id.* at 5, 7.) She "felt forced to resign as she could no longer endure the lack of support and direction." (*Id.* at 7.) She alleges that she "requested a two-week resignation transition, [but she] was walked out same-day, while a white colleague who also resigned was allowed to work her full notice." (*Id.* at 9.) Williams does not indicate the date on which she resigned, but states that she filed charge with the Equal Employment Opportunity Commission ("EEOC"), Pennsylvania Human Relations Commission, and Philadelphia Commission on Human Relations. September 26, 2024, and that the EEOC issued a right-to-sue letter on April 30, 2025, which Wiliams attached to her Complaint. (*See id.* at 2; *see also* ECF No. 2-1.)

Williams asserts claims pursuant to various employment statutes for discrimination "on the basis of race, color, and national origin, along with a hostile work environment, retaliation as a result of Plaintiff's opposition to these unlawful practices, and Defendants' wrongful termination based on constructive discharge of Plaintiff as a result of Plaintiff's opposition to these unlawful practices," and seeks damages. (Compl. at 1, 14.)

## II.    STANDARD OF REVIEW

The Court will grant Ms. Williams leave to proceed *in forma pauperis.* Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. The Court must determine whether the Complaint contains "sufficient factual matter, accepted as

true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  "At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.  Because Williams is proceeding *pro se*, the Court construes the allegations of the Complaint liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021).  However, "pro se litigants still must allege sufficient facts in their complaints to support a claim."  *Id.* (quoting *Mala*, 704 F. 3d at 245).

## III.    DISCUSSION

Ms. Williams asserts violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Pennsylvania Human Relations Act ("PHRA"), and the Philadelphia Fair Practices Ordinance ("PFPO"), based on a hostile work environment, constructive discharge, and retaliation.  (Compl. at 9-14.)  Federal law prohibits employment discrimination based on race, color, religion, sex, national origin, age, and disability.  *See E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 448-49 (3d Cir. 2015) (citing 42 U.S.C. § 2000e-2(a), 29 U.S.C. § 623; 42 U.S.C. § 12112).  To state a plausible employment discrimination claim, a plaintiff must plead sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence of the elements of the causes of action under the relevant statute.  *See Fowler v. UMPC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (noting that, although a plaintiff need not establish a *prima facie* case to survive dismissal for failure to state a claim, she still must "put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" (quotations omitted)).  Claims

4

under Title VII, the PHRA, and the PFPO are analyzed coextensively. *See Tomaszewski v. City of Phila.*, 460 F. Supp. 3d 577, 592 n.8 (E.D. Pa. 2020) (first citing *Dici v. Pennsylvania*, 91 F.3d 542, 552 (3d Cir. 1996) (PHRA); then citing *Joseph v. Cont'l Airlines*, 126 F. Supp. 2d 373, 376 n.3 (E.D. Pa. 2000) (PFPO)).

A plaintiff may state a claim for employment discrimination by pleading facts to support (1) that the plaintiff is a member of a protected class, (2) that the plaintiff was qualified for the position the plaintiff held or sought, (3) that the plaintiff suffered an adverse employment action, and (4) that the circumstances of the adverse employment action give rise to an inference of discrimination. *Johnson v. Keebler-Sunshine Biscuits, Inc.*, 214 F. App'x 239, 241 (3d Cir. 2007); *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 973-74 (3d Cir. 1998). To plead a hostile work environment claim, a plaintiff must allege: (1) she suffered intentional discrimination because of membership in a protected class; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) it would have detrimentally affected a reasonable person in like circumstances; and (5) a basis for employer liability is present. *Starnes v. Butler Cnty. Ct. of Common Pleas, 50th Jud. Dist.*, 971 F.3d 416, 428 (3d Cir. 2020) (alterations, internal quotations, and citations omitted); *Felder v. Penn Mfg. Indus., Inc.*, 303 F.R.D. 241, 243 (E.D. Pa. 2014). To support employer liability on a theory of *respondeat superior*, a plaintiff must allege that her employer knew or should have known about the harassment and failed to take prompt remedial action. *See Huston v. Procter & Gamble Paper Prod. Corp.*, 568 F.3d 100, 104-05 (3d Cir. 2009) (citation omitted).

Federal law also prohibits an employer from retaliating against an employee (a) for opposing any act made unlawful by the employment discrimination statutes, or (b) because she made a charge, testified, assisted, or participated in an investigation, proceeding, or hearing

under the employment discrimination statutes.  *See* 42 U.S.C. § 2000e-3; *E.E.O.C.*, 778 F.3d at

449.  To state a claim for retaliation, a plaintiff must allege that: (1) she engaged in conduct

protected by Title VII; (2) the employer took adverse action against her; and (3) a causal link

exists between her protected conduct and the employer's adverse action.  *See Connelly v. Lane*

*Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016); *Larochelle v. Wilmac Corp.*, 769 F. App'x 57,

60 (3d Cir. 2019).

It is well settled that voluntary resignation does not constitute an adverse employment

action under the anti-discrimination statutes.  *See Larochelle*, 769 F. App'x at 60-61; *Gunn v. On*

*the Border Acquisitions, LLC*, 298 F. Supp. 3d 811, 823 (E.D. Pa. 2018).  An adverse

employment action may be shown, however, with allegations that the plaintiff was constructively

discharged.  *See Larochelle*, 769 F. App'x at 61; *Gunn*, 298 F. Supp. 3d at 823.  A plaintiff

alleging constructive discharge in the context of a hostile work environment bears the additional

burden of "show working conditions so intolerable that a reasonable person would have felt

compelled to resign."  *Pa. State Police v. Suders*, 542 U.S. 129, 147 (2004); *see also Green v.*

*Brennan*, 578 U.S. 547, 559 (2016) ("[C]onstructive discharge is a claim distinct from the

underlying discriminatory act."); *Connors,* 160 F.3d at 974 (citing *Spangle v. Valley Forge*

*Sewer Auth.,* 839 F.2d 171, 173 (3d Cir. 1988)).  This means that a defendant must have

"knowingly permitted" objectively "intolerable conditions."  *Connors*, 160 F.3d at 975 (quoting

*Gray v. York Newspapers, Inc.,* 957 F.2d 1070, 1082 (3d Cir. 1992)); *see also Spangle,* 839 F.2d

at 173.  As the United States Court of Appeals for the Third Circuit has explained:

> Intolerability is not established by showing merely that a reasonable person,
> confronted with the same choices as the employee, would have viewed
> resignation as the wisest or best decision, or even that the employee subjectively
> felt compelled to resign; presumably every resignation occurs because the
> employee believes that it is in his best interest to resign.  Rather, intolerability is
> assessed by the objective standard of whether a reasonable person in the

employee's position would have felt *compelled* to resign—that is, whether he would have had no choice but to resign.

*Kiburz v. England*, 361 F. App'x 326, 337 n.11 (3d Cir. 2010) (quoting *Connors*, 160 F.3d at 976) (cleaned up).  Courts consider various factors in determining whether an employee was forced to resign, including whether she: (1) was threatened with discharge; (2) was encouraged to resign; (3) was demoted or suffered a reduction in pay or benefits; (4) was involuntarily transferred to a less desirable position; (5) had job responsibilities altered; or (6) began receiving unsatisfactory job evaluations.  *See Colwell v. Rite Aid Corp.*, 602 F.3d 495, 502-03 (3d Cir. 2010).

Ms. Williams's Complaint fails to state a claim to relief.  Her pleading largely consists of statements about her own subjective feelings and assertions that she faced a hostile work environment and felt the need to resign, asserting in conclusory fashion that actions taken against her were discriminatory, but that is insufficient.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"); *see also Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) ("A plaintiff cannot survive dismissal just by alleging the conclusion to an ultimate legal issue."). She describes Marriott as a difficult and disorganized workplace in which she did not receive adequate support or training and struggled with professional relationships, but her Complaint does not contain sufficient factual content to support an inference that she faced these circumstances because of her membership in a protected class.  *See Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 80 (1998) ("Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at *discrimination*." (cleaned up)); *Burlington N. & Santa Fe Ry.*, 548 U.S. 53, 68 (2006) (noting, in the context of retaliation claims, that Title VII "does not set forth a general civility code for the American workplace" and that "courts have

7

held that personality conflicts at work that generate antipathy and 'snubbing' by supervisors and co-workers are not actionable" under Title VII (cleaned up)); *see also Vance v. Ball State Univ.*, 570 U.S. 421, 452 (2013) ("Title VII imposes no general civility code" as it "does not reach the ordinary tribulations of the workplace, for example, sporadic use of abusive language or generally boorish conduct." (Ginsburg, J., dissenting) (first quoting *Oncale*, 523 U.S.at 81; then quoting B. Lindemann & D. Kadue, Sexual Harassment in Employment Law 175 (1992))).

Ms. Williams alleges that Johnson, a co-worker, contributed to the hostile work environment and that she complained of Johnson's behavior to her superiors.  While Johnson's alleged statements to Williams to "stay in your place" and "be quiet" could be viewed as race-neutral on their face, they might also support a claim of discrimination in some contexts. *Compare Umani v. Michigan Dep't of Corr.*, 432 F. App'x 453, 459 (6th Cir. 2011) (*per curiam*) (noting that the statement "you people don't do what I do, stay in your place" made by a white supervisor to a black prisoner-employee was not in itself a racial statement (quoting *Wilson v. Buschell,* No. 05-106, 2007 WL 2780886 at * 1, 3 (W.D. Mich. Sept. 20, 2007)), *and Barlow v. Triden Const. Supply, Inc.*, No. 01-271, 2002 WL 927422, at *3 (W.D. Ky. Apr. 26, 2002) (finding a supervisor's comment that "I'm the warehouse manager here, you need to stay in your place" was "facially unrelated to race"), *with Davis v. Prison Health Servs.*, No. 09-2629, 2011 WL 3353874, at *8 (N.D. Cal. Aug. 3, 2011) (concluding that "[t]he phrase 'need to stay in your place' presents a triable issue as to whether [a coworker] intended to discriminate against plaintiff based on her race and her gender"), *and Eubanks v. Wegmans Food Markets, Inc.*, No. 06-696, 2006 WL 2504099, at *1 (M.D. Pa. Aug. 28, 2006) (denying motion to dismiss claims for intentional infliction of emotional distress in employment context where co-worker directed numerous racial epithets at plaintiff and also "with clear racially derogatory implications [told]

Plaintiff to 'stay in [his] place' and 'you know what your place is'"), *and Browder v. Sally Beauty Co.*, No. 04-3135, 2006 WL 8437724, at *1 & *3 n.2 (N.D. Ala. June 16, 2006) (finding that a co-worker's statement to plaintiff that "[t]here's a place for y'all; stay in your place," was not race-neutral because, "[c]onsidering [the co-worker]'s history of bigoted behavior, a logical inference is that these facially neutral comments were in reality racial slurs").

However, Williams has not provided sufficient context for the Court to draw the inference that Johnson's facially race-neutral comments exhibited racial bias. Williams's conclusory assertion that Johnson "displayed racial prejudice" (Compl. at 6) is insufficient to state a claim. Labeling Johnson's comments and actions as "microaggressions" (*id.*), in and of itself, neither supports nor undermines Williams's claim of a hostile work environment; the question is whether the "workplace was permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive such that it amounted to a change in the terms and conditions of employment." *Muhammad v. Chi-St. Joseph Children's Health*, No. 22-4363, 2025 WL 2301187, at *6 (E.D. Pa. Aug. 8, 2025) (quoting *Perry v. Harvey*, 332 F. App'x 728, 730-31 (3d Cir. 2009) (cleaned up)); *see also Chen v. Yellen*, No. 14-50164, 2021 WL 4226202, at *12 n.4 (N.D. Ill. Sept. 16, 2021) ("[Plaintiff's] invocation of the concept of microaggressions misses the point. Regardless of whether an aggression is micro or macro, the Court considers the evidence of hostility in totality. If the combination of conduct sums up to be severe or pervasive, then it is enough. If it doesn't, then it is not. Whether the sum comes from a large number of small incidents, or a small number of larger incidents, the result is the same."), *aff'd*, No. 21-3110, 2023 WL 2967428 (7th Cir. Apr. 17, 2023). Ms. Williams does not support her assertions with any factual content about the frequency of Johnson's comments or the situations in which Johnson made them.

Similarly, Williams's claim of retaliation based on having reported Johnson's behavior to her supervisors fails because she does not specify the contents of those reports or when they occurred.  A general complaint about unfair treatment does not constitute protected activity for the purposes of a retaliation claim; a plaintiff must show that she complained specifically about unlawful discrimination.  *See Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir. 1995). Williams states that she "report[ed]" Johnson to her general manager and "confided" in her supervisor about her "experience and the difficulties she faced."  (Compl, at 6-7.)  However, she does not provide specific facts alleging that she complained about unlawful discrimination, nor does she allege when any of her reports to her supervisors occurred and how they related to any adverse employment actions taken against her.  Accordingly, Ms. Williams has failed to state a retaliation claim.

Ms. Williams also fails to support her allegations as to Rammamaurthy and Ilgenfritz with sufficient factual content.  She does not identify Rammamaurthy by position or title, just by name.  She does not indicate that she complained of these events to another person.  She does not assert that any adverse employment action was taken against her in relation to these events, only that she was excluded from a photograph.  While she alleges that Ilgenfritz "described" her as "aggressive and nasty" and "warn[ed] employees to 'watch out for [Williams]'" (Compl. at 5), as with the allegations about Johnson's conduct, these statements are facially neutral, and Williams includes no facts concerning to whom these comments were directed, how often, and when.  So, these allegations simply contain insufficient factual detail to state a claim to relief.  *See Sousa v. Amazon.com, Inc.*, No. 22-3043, 2023 WL 7486751, at *3 (3d Cir. Nov. 13, 2023) (*per curiam*) ("The question of whether an environment is sufficiently hostile or abusive must be judged by looking at all the circumstances, including the frequency of the discriminatory conduct; its

severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270-71 (2001) (cleaned up)).

Moreover, Ms. Williams does not provide the date on which she resigned or how it related in time to any of the events she describes in her Complaint. Plaintiffs alleging retaliation generally plead causation by alleging facts showing (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism. *See Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 196 (3d Cir. 2015). Yet such allegations are not always required, provided that the facts alleged support a plausible inference of retaliation. *See Connelly*, 809 F.3d at 792-93 & n.11 (explaining that a complaint with sufficient factual allegations to raise an inference of causation between protected activity and adverse employment action may state a claim for retaliation despite a lack of temporal proximity); *see also Ellingsworth v. Hartford Fire Ins. Co.*, 247 F. Supp. 3d 546, 557 (E.D. Pa. 2017) ("Where there is no unusually suggestive temporal proximity, courts look to the intervening period for circumstantial evidence that gives rise to an inference of causation when considered as a whole." (cleaned up)). Here, because Williams does not provide any timeline other than the date of her hiring and the date she filed an EEOC charge, she has not pleaded sufficient facts in support of causation.

## IV.    CONCLUSION

For the foregoing reasons, the Court will dismiss grant Williams leave to proceed *in forma pauperis* and dismiss her Complaint for failure to state a claim, pursuant to 28 U.S.C. § 1915. In light of her *pro se* status, Williams will be provided an opportunity to amend her

factual allegations to provide further context. An appropriate Order with additional information about filing an amended complaint will be entered separately.[3]

<div style="margin-left:auto; text-align:left; padding-left:40%">

**BY THE COURT:**

**/s/ Gerald Austin McHugh**

_____

**GERALD A. MCHUGH, J.**

</div>

---

[3] The Court will deny Williams's Motion to Appoint Counsel (ECF No. 7) without prejudice to reassertion after the Court conducts statutory screening of any amended complaint that Williams may file. *Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (holding that whether the plaintiff's claim has "some merit in fact and law" is a threshold question in appointing counsel).